T. A. BOUNDS ET AL. V. THOMAS LITTLE ET AL.

No. 2867.

1. **Practice—Interrogatories to Adverse Party.**—It is only in case of a deliberate refusal to answer by the party to whom interrogatories are propounded by the adverse party that the statute that the interrogatories should be taken as confessed should apply. It is not intended that the certificate of the officer to the refusal should be conclusive.

2. **Same.**—Where it was shown that the defendant did not refuse to answer interrogatories propounded him by the plaintiffs, or that he declined under a mistake as to his rights, or that the notary induced him to believe that he need not answer, the interrogatories should not be taken for confessed, provided that at the trial he shows that he is willing to answer them.

3. **Practice—Interrogatories to Adverse Party.**—If the interrogatories, with the certificate of the officer to the refusal to answer, be filed a reasonable time before trial, the party seeking to avoid the effect of the officer's certificate should file a motion to vacate the certificate before the trial begins.

4. **Fact Case.**—See facts where it is held error to take the interrogatories as confessed, and to refuse the privilege of answering them on the trial.

5. **Notice—Inquiry.**—It is the duty of a purchaser of land to inquire of a party in possession by what right he holds, and hence the law affects the purchaser with notice of the claim of such possessor. But in the absence of some information that some particular person knows of an adverse claim to the premises in dispute there is no duty resting upon the purchaser to make inquiries of such person.

6. **Same—Charge.**—It was error to charge as to notice that a purchaser was chargeable with what would have resulted upon inquiry of persons living near the land.

7. **Practice—Incompetent Testimony.**—Where testimony has been admitted, and in the process of the examination of the witness it is developed that his knowledge of facts is but hearsay, it is proper practice to withdraw from the jury that already admitted from the witness.

8. **Circumstantial Evidence—Deed.**—A deed may be established by circumstantial evidence.

9. **Same—Predicate.**—As predicate for such testimony due search for the original should be shown.

APPEAL from Navarro. Tried below before Hon. Rufus Hardy.
The opinion states the case.

*J. F. Stout* and *W. W. Ballew*, for appellants.— 1. The court should not admit incompetent evidence and then, after the effect has been impressed upon the minds of the jury, withdraw the same with the mere statement that the evidence is now withdrawn. Railway v. Burke, 55 Texas, 323.

2. The court erred in admitting, over the objection of defendant, the interrogatories propounded to the defendant T. A. Bounds, together with the commission and notary's certificate, as copied in statement of facts, because defendant Bounds did not refuse to answer said interrogatories, and because the notary's certificate was not made by the notary, and his certificate was obtained for the purpose of preventing defendant from testifying. Railway v. Reason, 61 Texas, 613.

3.   In a suit in trespass to try title, where plaintiff claims under a lost instrument, the proper predicate must be laid for the admission of secondary evidence, and the proof must show the existence, execution, delivery, and subsequent loss of the instrument, as well as the contents of the deed and identity of the premises conveyed; and where the instrument of title under which plaintiff seeks to establish his title has never been recorded, and no notice given of the loss, and no evidence of its execution, contents, and delivery, subsequent holding under and proper custody of said deed, a charge instructing the jury to consider whether a deed had been executed is unwarranted by precedent and unknown in practice. Wiggins v. Fleishel, 50 Texas, 57; Sample v. Irwin, 45 Texas, 567; Butler v. Dunagan, 19 Texas, 559; Dunn v. Choate, 4 Texas, 14.

On notice.   Eylar v. Eylar, 60 Texas, 315; Wethered v. Boon, 17 Texas, 151, and authorities cities.

*Frost & Etheredge*, for appellees.—Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is also notice of everything to which it is afterward found that such inquiry might have led, although all was unknown for want of investigation.   Hines v. Perry, 25 Texas, 443; Martel v. Somers, 26 Texas, 551; Littleton v. Giddings, 47 Texas, 109; Traylor v. Townsend, 61 Texas, 144.

GAINES, ASSOCIATE JUSTICE.—This was an action of trespass to try title brought by appellees against appellants to recover a tract of two hundred acres of land, a part of the James Little survey.

The land was patented to James Little, who died in 1874, having made a will by which he devised all his property to his nephew Robert J. Little His wife Mary A. Little survived him.   On February 16, 1874, Robert J. Little conveyed to Mary A. Little all the property devised to him by the will of James Little.   Afterwards Mary A. Little died, having made a will by which she devised all her estate to F. B. Smith.   The date of her death is not shown by the record.   In July, 1874, F. B. Smith, who was a defendant in the court below, conveyed to his codefendant Bounds the land in controversy by a warranty deed.   Such was the documentary evidence in the case, and from it the title to the premises in controversy appears to be in appellant Bounds.   But in the deed from Robert J. Little to Mary A. Little the consideration is recited to be as follows: "Five hundred dollars lawful currency of the United States, and the further consideration of two hundred acres of land described in a deed from Mary A. Little to myself of even date herewith, receipt of which is hereby acknowledged."   This recital gives the key note to the controversy in this case.   The plaintiffs claim as heirs of Robert J. Little, and seek to show by circumstantial evidence that the deed referred to in the conveyance from him to Mary J. Little conveyed to him the two

hundred acres of land in controversy. The defendant controverted this claim, and also sought to show that defendant Bounds was a purchaser for a valuable consideration without notice of the deed, if any such ever existed.

In the view we take of the case it will be neither necessary nor proper to discuss the evidence; nor would it subserve any useful purpose to consider in detail the numerous assignments of error.

The plaintiffs propounded interrogatories under the statute to defendant Bounds, with the view of showing that he had notice of their claim at the time he purchased from his codefendant Smith. The notary returned the commission and interrogatories unanswered, with a certificate that the defendant had·refused to answer them. Upon the trial the plaintiffs offered to read the interrogatories to the jury for the purpose of having them considered as confessed. The defendant objected, and in order to maintain his objection was sworn, and testified in effect that he did not willfully refuse to answer the questions; that some of them did not admit of the answer yes or no, and that the notary told him that he must answer each of them in that manner; that he told the notary that he could not do this, and that he would be present at the trial next day ready to testify, and that the notary told him that under the circumstances he would not answer them himself. The witness was subjected to a rigid cross-examination for the purpose of showing that he could have answered the questions, and admitted that he could have answered most of them. No evidence was offered to contradict his testimony as to what occurred between him and the notary. The court permitted the interrogatories to be read to the jury, and instructed them that if the defendant refused to answer the questions they should be taken as confessed. We think the court should have passed upon the question of the admissibility of the interrogatories and should not have submitted it to the jury. But no point has been made upon this by appellants. They did, however, except to the reading of the interrogatories, and have assigned the ruling of the court in that particular as error.

We are of opinion that the court erred in its ruling. The object of the statute when first enacted was to enable a party to a suit to obtain the testimony of his adversary, which he could not do at common law. Since the passage of the act permitting parties to testify the Revised Statutes have been adopted, and the substance of the old statute has been retained, for the reason, it is presumed, that it allows leading questions to be asked, and also permits the party who propounds the interrogatories to contradict the answers by other competent testimony. Under its provisions a party may obtain the testimony of his adversary without vouching for his credibility as a witness. Sayles' Rev. Stat., arts. 2240, 2242. To give effect to the law it was provided that upon the refusal of the party interrogated to answer, the interrogatories should be taken as con-

fessed, upon the certificate of the officer to the fact.    Sayles' Rev. Stats., art. 2243.    But we apprehend that it was only in case of a deliberate refusal that this provision was intended to apply.    It was certainly not intended that the certificate of the officer should be deemed conclusive in every case.    We think, therefore, that if it be shown that he did not refuse, or that he declined under a mistake as to his rights and not contumaciously, or that the notary induced him to believe that he need not answer, the interrogatories should not be taken as confessed, provided that at the trial he shows that he is willing to answer them.    Even after the trial has begun all the purposes of the law can be subserved by permitting him then to answer.    The only reason that can be urged against such practice is the slight delay that may be thereby caused in proceeding with the case.    If the party has once willfully refused he should be concluded; but we think where there is a reasonable doubt about the question of his refusal, the better rule is to give him the benefit of it, and that the interrogatories should not be taken as confessed; provided always, he be willing then to answer.    This in every case he should be required to do should the other party demand it.    The statute was intended to promote the administration of justice, and we think that in some cases a different rule is calculated to work a manifest wrong.

It does not appear at what time the interrogatories, with the officer's certificate of refusal, were filed in court.    If filed a reasonable time before the trial, so that the defendant could have had notice of the fact before his announcement, a proper practice would have been to move to suppress or vacate the certificate before entering upon the trial of the case.    To refuse to permit them to be read when no motion had been made to vacate the certificate, after the party who has propounded the interrogatories has announced ready, relying upon the implied confession to make out his case, would place him at a serious disadvantage upon the trial.    It has been repeatedly held that when the deposition of a party has been taken under the Act of May 13, 1846, exceptions to the answers must be filed and acted upon before the commencement of the trial.    Dikes v. De Cordova, 17 Texas, 618; Allen v. Atchison, 26 Texas, 616; Handly v. Leigh, 8 Texas, 129.    In this case, however, the record does not show that any objection was made to entering upon the inquiry as to the truth of the certificate during the progress of the trial.    We think, therefore, that the court after hearing the evidence should have refused to permit the interrogatories to be read to the jury, and should then have allowed the defendant the opportunity of answering them.

Upon the question of notice the court among other instructions gave the following:

"If before defendant Bounds purchased from his codefendant Smith the land in controversy, if he ever did, he had heard of the claim of Robt. J. Little or his heirs to the land in question, and by the making of

such inquiries as a prudent man would have made, *such as by inquiries made among the persons living near the land, could have learned from them, or from such sources as they might have directed him to, of the existence of a deed from Mary A. Little to Robt. J. Little, if any such deed was ever made to the land in question, and if he failed to make such inquiries, then he is deemed to have notice.*"

This charge is assigned as error, and we are of opinion that the assignment is well taken. We know of no rule of law which requires one who is about to purchase land to make inquiries of persons living near it. It is the duty of a purchaser to inquire of the party in possession by what right he holds, and hence the law affects him with notice of the claim of such possessor. But in the absence of some information that some particular person knows of an adverse claim to the premises in dispute, there is no duty resting upon the purchaser to make inquiries of such person, although he may live in the neighborhood in which the land lies.

If Bounds had heard that the heirs of Robert Little claimed the land he should have made inquiry of them, and if he failed to do so the law would have affected him with notice of such facts in reference to the title as were within their knowledge.

The court did not err in first admitting and then excluding the testimony of the witness Nussbaum. His deposition was taken and read. He testified to facts very material to plaintiffs; but after that part of his testimony was read to the jury his subsequent answers disclosed that he had testified from hearsay. As soon as the source of his information was shown, the court excluded the evidence. The defendants should have objected in the first instance, and should have pointed out to the court that part of the deposition which disclosed that the witness had testified from hearsay.

In view of another trial we will submit some general remarks upon the merits of the case. As has been stated, the effort of plaintiffs was to establish, by circumstances, the execution and contents of a deed—that is to say, the execution of a deed from Mary A. Little to Robert J. Little to the land in controversy—claimed to have been lost. We are of the opinion that a deed may be established by circumstantial evidence. Mr. Starkie, in his philosophical treatise on evidence, uses this language: "It has been doubted whether the doctrine of presumption as to the execution of deeds of conveyance has not been carried to too great a length. The reasons, however, which have been urged on the subject are properly applicable to *legal* and *artificial* presumptions only—that is, to such as are made by the courts, either directly or indirectly, by means of a jury, and not to such conclusions of fact as are made by a jury upon a full conviction of the truth of the fact by the natural force of evidence. To the weight and importance of circumstantial evidence to prove the actual execution of a conveyance whose existence can not be directly proved, there

is no limit short of that which necessarily produces actual conviction, and there seems to be no rule of law which excludes such evidence from the consideration of the jury; if there were, it would be a singular and anomolous one which shuts out evidence of a nature and description which is admissible in every other case, however important the consequences, even upon trials for murder and treason. Juries are bound to decide according to the actual truth of the facts. * * * It would, therefore, be absurd and inconsistent to say that a jury was not to be allowed to find according to the real fact, when they are satisfied that an actual conveyance has been executed." 2 Stark. on Ev., 924.

We think, however, in a case like the present, as preliminary to the introduction of circumstantial evidence, it ought first to be proved that search had been made for the supposed deed in the place where such instrument would most likely be found. If such a deed was ever executed and delivered to Robert J. Little, the presumption would be that it would be found in the possession of his heirs or other legal representatives. The record discloses no evidence as to the loss of the deed, except the testimony of a witness who swore that defendant Smith said that the deed had been lost, or that if ever there was such a deed it had been lost. No one of the plaintiffs or other heirs of Robert J. Little testified that he did not have the deed, or that he had ever made search or inquiry for it. We therefore have the anomoly of an attempt to prove an instrument by circumstantial evidence when the paper, if it ever existed, may be in the possession of one of the plaintiffs or of some other person equally entitled to claim under it.

We think that if the proper predicate had been laid by proving that the deed was not in the possession of Little's heirs and could not be found, then the evidence, the introduction of which is complained of in the first assignment, should have been admitted.

The court did not err in instructing the jury that the plaintiffs, if heirs of Robert J. Little, might recover, although he left other heirs who were not parties to the suit. One tenant in common may recover against a wrongdoer without joining his cotenants as plaintiffs in the suit.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 3, 1889.